UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL E BOYD,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA PUBLIC UTILITIES<br>COMMISSION, et al.,<br><br>Defendants. | Case No.  25-cv-01286-PCP<br><br>**ORDER GRANTING MOTIONS TO<br>DISMISS FIRST AMENDED<br>COMPLAINT**<br><br>Re: Dkt. Nos. 46, 47, 48, 56 |

Self-represented plaintiff Michael Boyd brings antitrust and regulatory claims against various utility companies, the California Public Utilities Commission (CPUC), and current and past CPUC officials and staff. Defendants move to dismiss for failure to state a claim and lack of statutory jurisdiction. For the reasons below, the Court grants defendants' motions.

## BACKGROUND

Boyd owns and uses solar panels on the roof of his home.[1] Boyd filed with the Federal Energy Regulatory Commission (FERC) to become a Qualifying Facility "to get access to the wholesale energy markets regulated by the FERC." A FERC-approved entity issued Boyd six renewable energy certificates (RECs) for the energy produced by his solar panels. Boyd alleges that, as a Qualified Facility, he would be able to trade his RECs for financial compensation from defendant Pacific Gas & Electric Company (PG&E) if defendants had not denied him access to the wholesale market.

Boyd was a party to the proceedings regarding CPUCS's Rulemaking 20-08-020. The

---

[1] The Court assumes the truth of the allegations in the complaint for the purposes of defendants' Rule 12(b)(6) motion.

rulemaking focused on possible changes to the state's Net Energy Metering (NEM) program. California's "three largest investor-owned utilities," PG&E, Southern California Edison Company (SCE), and San Diego Gas & Electric Company (SG&E) (collectively, the utility defendants), participated in the rulemaking through joint filings and joint representation by defendant Carla Peterman. Peterman is a former CPUC Commissioner, former officer of SCE, and current officer of PG&E. Rulemaking participants, including the utility defendants and Boyd, submitted proposals for changes to the NEM program. The utility defendants' proposal was premised on shifting costs to relieve financial burdens on lower-income customers.

The rulemaking resulted in the CPUC issuing Decision 22-12-056 on December 19, 2022. Colloquially, the decision created NEM 3.0. The decision cites cost shifting as a rationale. Boyd alleges that NEM 3.0 hurts existing customers with solar panels by diminishing their return on investment through lower compensation rates for the excess energy their panels produce.

Boyd alleges claims for violations of (1) the Sherman Act, 15 U.S.C. § 1, (2) the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 *et seq.*, and (3) the Public Utility Regulatory Policies Act (PURPA). The utility defendants, Peterman, and the CPUC defendants—the CPUC and current and former CPUC officials Matthew Baker, Karen Douglas, Martha Guzman-Aceves, Darcie Houck, Kelly Hymes, Wayne Parker, Clifford Rechtschaffen, John Reynolds, Alice Reynolds, and Genevieve Shiroma, who are sued in their individual and official capacities—each move to dismiss Boyd's first amended complaint under Federal Rule of Civil Procedure 12(b)(6).[2]

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the

---

[2] Peterman joins in the utility defendants' motion in full but "brings [a] separate motion to highlight Plaintiff's failure to plead particularized facts that establish Ms. Peterman herself was involved in any alleged antitrust conspiracy and to extinguish any doubt as to the PURPA claim's viability."

court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Materials outside the complaint can be considered on a Rule 12(b)(6) motion if they are incorporated by reference therein or otherwise judicially noticeable. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A [district] court may [ ] consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). The Court may consider documents that are "not physically attached to the complaint" "if the [ ] 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)). Federal Rule of Evidence 201 permits judicial notice of "a fact that is not subject to reasonable dispute" because it is "generally known."

United States District Court
Northern District of California

3

United States District Court
Northern District of California

**ANALYSIS**

## I.    Sherman Act

### A.    The utility defendants and Peterman are immune under *Noerr-Pennington*.

The utility defendants and Peterman argue that they are immune under the *Noerr-Pennington* doctrine because Boyd concedes his antitrust allegations are based entirely on the CPUC's decision and the rulemaking. *See* Dkt. 50 (Opp'n), at 7, 9.

The *Noerr-Pennington* doctrine "allows private citizens to exercise their First Amendment rights to petition the government without fear of antitrust liability." *Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc.*, 552 F.3d 1033, 1044 (9th Cir. 2009). Under *Noerr-Pennington*, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Courts must "construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Id.* A plaintiff's complaint must "contain specific allegations demonstrating that the *Noerr-Pennington* protections do not apply." *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886 (9th Cir. 1988); *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) (applying a heightened pleading standard to establish an exception to *Noerr*-Pennington).

"Neither the Petition Clause nor the *Noerr-Pennington* doctrine," however, "protects sham petitions, and statutes need not be construed to permit them." *Sosa*, 437 F.3d at 932. This "'sham' exception to *Noerr* encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (emphasis in original). The sham exception "is limited to situations where the defendant is not seeking official action by a governmental body, so that the activities complained of are 'nothing more' than an attempt to interfere with the business relationships of a competitor." *Franchise Realty Interstate Corp. v. San Francisco Loc. Joint Exec. Bd. of Culinary Workers,* 542 F.2d 1076, 1081 (9th Cir. 1976).

The Ninth Circuit applies a "a strict two-step analysis to assess whether a single action constitutes sham petitioning." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades*

4

*Council, AFL-CIO* ("*POSCO*"), 31 F.3d 800, 810–11 (9th Cir. 1994). "First, the suit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; second, the baseless lawsuit must conceal an attempt to interfere directly with the business relationships of a competitor." *Id.* at 810 (quoting *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.* ("*PREI*"), 508 U.S. 49, 60 (1993)).[3] "The two parts of the test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." *Id.*

Boyd does not dispute that the utility defendants' and Peterman's participation in the rulemaking was protected petitioning activity under *Noerr-Pennington*. Instead, he argues the rulemaking was a sham proceeding. Boyd's argument fails for several reasons.

First, Boyd does not allege the utility defendants and Peterman sought to use the *process* of the rulemaking to harm him or competitors' interests. He instead takes umbrage with the ultimate decision. Even if a party seeks to harm the interests of others, its petitioning efforts are protected so long as the party "sought to do so not through the very process of lobbying, … but rather through the ultimate *product* of that lobbying"—here, through the CPUC's rulemaking decision. *Omni*, 499 U.S. at 381. "[I]t is clear that defendants were seeking and obtained official action from a governmental body" by advocating at the rulemaking for a desired decision. *Franchise Realty*, 542 F.2d at 1080. Boyd's few allegations challenging the process of the rulemaking are conclusory and do not change this outcome. For example, Boyd alleges that the rulemaking was a sham because it was "designed to appear as if disadvantaged customers' interests [were] being considered, when it[] [was] entirely staged to favor utilities' interests."[4] But this argument still

_____

[3] "This inquiry is essentially retrospective: If the suit turns out to have objective merit, the plaintiff can't proceed to inquire into subjective purposes, and the action is perforce not a sham." *POSCO*, 31 F.3d at 811. "On the other hand, when the antitrust defendant has lost the underlying litigation, a court must resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) (quoting *PREI*, 508 U.S. at 60 n.5 (internal quotations omitted)).

[4] Boyd also alleges that the rulemaking was an attempt to avoid adhering to a cost formula "mandated" by the Ninth Circuit in prior litigation to which Boyd was a party. The Court need not

United States District Court
Northern District of California

centers on Boyd's disagreement with the decision, which he alleges favors the utility defendants.

Second, and for the same reasons, Boyd's argument that the utility defendants obscured their ill-intentioned and profit-driven motives at the rulemaking is irrelevant. In *Franchise Realty*, the Ninth Circuit explained that it is "inevitable" that lobbying parties "would be aware of, and possibly even pleased by, the prospect of" their efforts inflicting "some direct injury upon the interests" of other parties. 542 F.2d at 1080. But to "hold that the knowing infliction of such injury renders the campaign itself illegal would thus be tantamount to outlawing all such campaigns" and undermining *Noerr-Pennington*'s protection of the right to petition. *Id.*; *see Empress LLC v. City & Cnty. of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005) (explaining that illegal or injurious motives for petitioning activity does not change immunity).

Third, Boyd argues that the utility defendants' position at the rulemaking was baseless because "no reasonable litigant could expect [their] proposal to be adopted on its merits." The CPUC, however, *did* adopt the utility defendants' proposal to shift costs away from lower-income customers. *See* Dkt. 43 ¶¶ 20–21; Dkt. 48, Declaration of Justin P. Raphael, Ex. A.[5] Advocacy that is "successful in obtaining the governmental action sought" is not objectively baseless. *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir. 1998) (quoting *Franchise Realty*, 542 F.2d at 1079). Because the utility defendants' advocacy was not objectively baseless, their subjective motives, again, are irrelevant. *See PREI*, 508 U.S. at 60.

Accordingly, Boyd's argument that the rulemaking and decision were sham petitions fails and the utility defendants and Peterman are immune from his Sherman Act claim under *Noerr-Pennington*.

---

reach this argument, however, because advocating for an erroneous decision does not vitiate *Noerr-Pennington*'s protections. *See Franchise Realty*, 542 F.2d at 1079 n.2 (9th Cir. 1976) ("We know of no case that holds that joint action which succeeds in persuading a public body to make an erroneous decision can give rise to a cause of action under the Sherman Act.").

[5] Boyd's first amended complaint incorporates the decision by reference because it "necessarily relies" on the content and issuance of the decision in alleging Boyd's claims. *Lee*, 250 F.3d at 688. Although Boyd challenges the propriety of considering the decision, which was filed as an exhibit to the utility defendants' motion, he does not challenge its authenticity. *See* Opp'n 6.

**B.    Boyd's conspiracy allegations do not preclude *Noerr-Pennington* immunity.**

Boyd's contentions of a conspiracy involving "politically incestuous relationships" between the utility defendants and certain CPUC officials do not provide a basis for this Court to find the "sham petition" exception applicable to the utility defendants' conduct. As the Supreme Court has made clear, "*Noerr-Pennington* cannot be circumvented by merely alleging that a government official was involved in the alleged conspiracy." *Boone*, 841 F.2d at 897; *Omni*, 499 U.S. at 383; *Empress*, 419 F.3d at 1057 ("[T]here is no 'conspiracy' exception to the Noerr-Pennington doctrine that applies when government officials conspire with a private party. … In such circumstances, a remedy lies only against the conspiring government officials, not against the private citizens."). To the contrary, private advocacy and lobbying—such as the alleged interactions between the utility defendants and the CPUC defendants—are "form[s] of advocacy protected by the *Noerr-Pennington* rule." *Boone*, 841 F.2d at 894–95. Peterman's involvement as an advocate for the utility defendants is likewise unremarkable because "[f]ormer government officials are often times hired by organizations seeking to petition government. Their expertise makes them particularly well suited for such a role." *Id.* at 895.[6]

**C.    The CPUC officials are immune under *Parker*.**

The CPUC officials argue that they are immune from Boyd's Sherman Act claim under the

---

[6] Even if allegations of conspiracy could overcome *Noerr-Pennington* immunity (which they cannot), Boyd's allegations are inadequate to plausibly allege a Sherman Act conspiracy. To state a claim under Section 1, "[i]t is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (instructing that a Section 1 claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made"). When presenting circumstantial evidence of a conspiracy, "plaintiffs must allege something more than conduct merely consistent with agreement in order to nudge their claims across the line from conceivable to plausible." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation*, 28 F.4th 42, 47 (9th Cir. 2022). "Something more" includes "[p]lus factors [that] are often economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *Id.* Here, none of Boyd's allegations are inconsistent with the conclusion that the CPUC defendants and the utility defendants acted unilaterally rather than in coordination.

United States District Court
Northern District of California

*Parker* state action doctrine.[7]

In *Parker v. Brown*, the Supreme Court "held that the Sherman Act did not apply to anticompetitive restraints imposed by the States 'as an act of government.'" *Omni*, 499 U.S. at 370 (discussing *Parker v. Brown*, 317 U.S. 341, 352 (1943)). "*Parker* covers not only state legislation, but also the acts of … executive-branch officials" and executive agencies operating pursuant to constitutional and statutory authority. *Sanders v. Brown*, 504 F.3d 903, 915 (9th Cir. 2007) (citing *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 876 (9th Cir. 1987) and *Deak-Perera Hawaii, Inc. v. Dept. of Transp.*, 745 F.2d 1281, 1283 (9th Cir. 1984)). Two lines of cases have emerged to determine whether conduct is "directed" by the state legislature and therefore insulated from Sherman Act claims. *Id.* Under the *Hoover* line of cases, "a state's own acts in the antitrust area are always immune … as long as the state itself, acting as sovereign, created the restraint of trade." *Id.* (citing *Hoover v. Ronwin*, 466 U.S. 558, 568–69 (1984)). Under the *Midcal* line of cases, "any action in restraint of trade is only immune if it satisfies a two-part test: The anticompetitive policy not only must be (1) 'clearly articulated and affirmatively expressed as state policy,' but also must be (2) 'actively supervised by the state itself.'" *Id.* (quoting *Cal. Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980)).

Boyd urges the Court to apply the *Midcal* test. Opp'n 12. Each of his arguments as to why the CPUC officials are not immune under *Parker* likewise relies on the *Midcal* test. The *Midcal* test, however, only applies to determining "whether *private* conduct pursuant to a state statute gets *Parker* immunity. … Indeed, each of the *Midcal* line of cases involved a private body—not a state—making anticompetitive decisions under the aegis of a state regulatory scheme." *Sanders*, 504 F.3d at 915, 917 (emphasis added); *see N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494, 504–08 (2015) (applying *Midcal* test where a state delegated control over a market to nonsovereign actors). In *Charley's Taxi*, for example, the Ninth Circuit reversed the district court's denial of *Parker* immunity where the district court had relied on the *Midcal* test to evaluate

---

[7] Boyd's opposition brief concedes the CPUC is immune from the Sherman Act claim under the Eleventh Amendment. Opp'n 2.

public officials' immunity. 810 F.2d at 876. The court explained that "[t]he requirement of specific authorization that we impose on cities to qualify for *Parker* immunity" under the *Midcal* test "is not appropriate for the executive branch of the state government. When the state executive or executive agencies act within their lawful authority, their acts are those of the sovereign." *Id.*; *Sanders*, 504 F.3d at 917. The Ninth Circuit proceeded to apply the *Hoover* test and conclude that the director of the state department of transportation was immune because the department acted pursuant to its constitutional or statutory authority. *Charley's Taxi*, 810 F.2d at 876.

Here, the "Commission is an arm of the State of California." *City of San Juan Capistrano v. Cal. Pub. Util. Comm'n*, 937 F.3d 1278, 1281 (9th Cir. 2019); *see also* Cal. Const. art. XII, § 1 (establishing that commissioners are appointed by the governor and approved by the senate). The CPUC conducted the rulemaking, and its decision establishes a net energy metering regulatory scheme and sets tariff rates; it does not give "price-fixing control" or other discretionary authority to private parties. *See Sanders*, 504 F.3d at 917. The CPUC thus imposed the alleged restraints on competition. *See id.* at 918. Accordingly, the *Hoover* test applies.

The question, then, is whether the CPUC and its officials acted "pursuant to their constitutional or statutory authority" in conducting the rulemaking and issuing the decision. *Id.* The answer is yes. The California Public Utilities Code authorizes the CPUC to "supervise and regulate every public utility in the State and [] do all things … which are necessary and convenient in the exercise of such power and jurisdiction." Cal. Pub. Util. Code § 701. Section 2827 establishes net energy metering. *Id.* § 2827. Section 2827.1 directs the CPUC to "develop a standard contract or tariff, which may include net energy metering, for eligible customer-generators with a renewable electrical generation facility that is a customer of a large electrical corporation." *Id.* § 2827.1(b). The CPUC is authorized to "revise the standard contract or tariff as appropriate to achieve the objectives" enacted and codified by the legislature. *Id.* Further, the code requires that the "commission shall determine which rates and tariffs are applicable to customer generators only during a rulemaking proceeding." *Id.* § 2827.1(b)(7). The powers necessary to conduct rulemakings and issue decisions are enumerated in the California constitution: "The commission may fix rates, establish rules, examine records, issue subp[o]enas, administer oaths,

9

take testimony, punish for contempt, and prescribe a uniform system of accounts for all public utilities subject to its jurisdiction." Cal. Const. art. XII, § 6.

As these authorities make clear, the CPUC acted pursuant to its statutory and constitutional authority in conducting the rulemaking and issuing its decision to fix net energy metering rates. Because the CPUC officials participated in the CPUC's lawful sovereign acts, they are entitled to *Parker* immunity from Boyd's Sherman Act claim. *See Charley's Taxi*, 810 F.2d at 876. Boyd's argument that the CPUC defendants conspired with the utility defendants, as private actors, again does not change this result. *Omni*, 499 U.S. at 374 (holding that there is no "conspiracy exception" to *Parker* immunity).

*       *       *

For the foregoing reasons, Boyd's Sherman Act claim is barred by *Noerr-Pennington* and *Parker* immunity. The claim is therefore dismissed.

## II.      Cartwright Act

The Cartwright Act provides that "every trust," including any "combination of capital, skill or acts by two or more persons … [t]o create or carry out restrictions in trade or commerce," "is unlawful, against public policy and void." Cal. Bus. & Prof. Code §§ 16720, 16726. The analysis under the Cartwright Act "mirrors the analysis" under the Sherman Act. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); *Blank v. Kirwan*, 39 Cal. 3d 311, 320 (Cal. 1985) ("In interpreting the Cartwright Act, we properly look to the Sherman Act and cases construing it.").

Because Boyd fails to plead a claim under the Sherman Act, he likewise fails to plead a claim against any defendant under the Cartwright Act. *See Tuolumne*, 236 F.3d at 1160 ("Given our analyses and conclusions regarding the federal claims, the district court properly granted summary judgment on the state antitrust claims, as well."). The utility defendants are immune from the Cartwright Act claim under *Noerr-Pennington*. *See Blank*, 39 Cal. 3d at 325–26 (applying *Noerr-Pennington* immunity to a Cartwright Act claim); *Sanders v. Brown*, 504 F.3d 903, 919 (9th Cir. 2007) (same). And the claim fails as to the CPUC defendants because state political subdivisions are not subject to the Cartwright Act. *Sanders*, 504 F.3d at 919 (citing *Blank*,

United States District Court
Northern District of California

39 Cal. 3d at 323). Accordingly, Boyd's Cartwright Act claim is dismissed.

## III.    PURPA

Boyd alleges a claim against the CPUC defendants under section 210(g) of PURPA.[8] The CPUC defendants argue that the state courts have exclusive jurisdiction over Boyd's PURPA claim.

An "as-applied" claim under PURPA "challenges the application of a state agency's rules to an individual petitioner; this type of claim is reserved for adjudication by the state courts." *Sols. for Utilities, Inc. v. California Pub. Utilities Comm'n*, No. 11-cv-04975-JWH-JCGx, 2022 WL 1741128, at *2, 6 (C.D. Cal. Mar. 9, 2022); 16 U.S.C. § 824a-3(g).

Boyd confirms he "alleges an as-applied violation of PURPA § 210(g), asserting that [CPUC] officials denied [him] a standard PURPA contract and forced him into NEM 3.0." Opp'n 13. The Ninth Circuit, in a prior case involving Boyd, found an indistinguishable argument that individuals "ha[d] repeatedly been denied a standard contract" and forced to participate in the NEM program "veer[ed] into the category of an as-applied challenge that can only be brought in state court." *Californians for Renewable Energy v. Cal. Pub. Util. Comm'n*, 922 F.3d 929, 939 n.4 (9th Cir. 2019). Boyd concedes as much but nonetheless argues that his claim is a "hybrid implementation claim, which is cognizable in federal court after FERC petition." The Court is not aware of any authority recognizing a "hybrid implementation claim" and Boyd's cited caselaw does not support the existence of such a claim. *See Power Res. Grp., Inc. v. Pub. Util. Comm'n of Texas*, 422 F.3d 231, 239 (5th Cir. 2005) (declining to review the district court's dismissal of an as-applied claim for lack of jurisdiction). To the extent Boyd argues he can bring an implementation claim, as opposed to an as-applied claim, he neither alleges an implementation claim nor alleges he petitioned FERC before filing this action. *See Allco Renewable Energy Ltd. v. Massachusetts Elec. Co.*, 208 F. Supp. 3d 390, 396 (D. Mass. 2016), *aff'd*, 875 F.3d 64 (1st Cir. 2017) (explaining that an implementation claim alleges "that a state agency has failed to

---

[8] The first amended complaint does not appear to allege any PURPA claim against Peterman, and Boyd has disclaimed any desire to pursue such a claim as to Peterman. Opp'n 13.

11

United States District Court
Northern District of California

implement FERC's PURPA regulations or has implemented them in a way that is inconsistent with FERC's regulations" and that a private party may bring such a claim in federal court only after petitioning FERC to bring an enforcement action and FERC declines).

Because Boyd alleges an as-applied PURPA claim, the Court lacks statutory jurisdiction. Accordingly, Boyd's PURPA claim is dismissed.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss.[9] Dismissal is with leave to amend and without prejudice. Any amended complaint must be filed by March 10, 2026, but Boyd should file an amended complaint only if he can address the deficiencies identified in this Order. If Boyd does not file an amended complaint, his claims under the Sherman Act and the Cartwright Act will be dismissed with prejudice, his PURPA claim will be dismissed without prejudice, and the Court will enter judgment in defendants' favor.

**IT IS SO ORDERED.**

Dated: February 10, 2026

P. Casey Pitts
United States District Judge

---

[9] Boyd's motion for leave to file written argument, Dkt. 56, is denied because it would not assist the Court in deciding the motions to dismiss.

12